UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS EDISON DELONG,

Plaintiff,

v.

Case No.: 11-CV-11742
Honorable John Corbett O'Meara
Magistrate Judge David R. Grand

MICHAEL ASTRUE,
Commissioner of Social Security,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 11]**

Plaintiff Thomas Edison Delong brings this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions which have been referred to this court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. RECOMMENDATION

For the reasons set forth below, the court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") assessment that Delong is not disabled. Accordingly, the court recommends that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Delong's motion [10] be DENIED and that, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's decision be AFFIRMED.

## II. REPORT

### A. Procedural History

On October 23, 2007, Delong filed applications for DIB and SSI under Title II and Title XVI, alleging disability as of April 2, 2007. (Tr. 103-113). The claims were denied initially on February 28, 2008 and December 17, 2008, respectively. (Tr. 56-59). Thereafter, Delong filed a timely request for an administrative hearing, which was held on January 20, 2010, before ALJ Karen Sayon. (Tr. 28-55). Delong, represented by attorney Matthew Taylor, testified, as did vocational expert ("VE") Norman Ables. (*Id.*). On January 26, 2010, the ALJ found that Delong was not disabled. (Tr. 10-27). On February 25, 2011, the Appeals Council denied review. (Tr. 1-5). Delong filed for judicial review of the final decision on April 21, 2011. [1]

### B. Background

Delong has numerous conditions that he reported contributed to his disabled status, and which were addressed in the ALJ's decision. On appeal, Delong appears only to take issue with the ALJ's evaluation of his leg edema secondary to his uncontrolled hypertension, and its impact on the ALJ's hypothetical questions to the vocational expert and on his ultimate decision. Therefore, the court will limit its recitation of the background to that condition.

#### *1. Disability Reports*

In an undated disability report, Delong reported that uncontrolled hypertension and leg swelling, among other conditions, limited his ability to work. (Tr. 137). He stopped working on his alleged onset date because, he reported, he "couldn't physically keep working any longer." (*Id.*). In a function report filed in November 2007, Delong reported that he lived alone in an apartment and that his daily activities included getting up and making his bed, making breakfast, watching television, cleaning, eating lunch, walking outside, making and eating dinner, watching

more television and then retiring to bed. (Tr. 152). He reported needing to sit down to dress. (Tr. 153). Delong reported his interests as watching television, hunting and fishing, but that he had a hard time hunting because of his difficulty standing for a long time in one place and walking long distances. (Tr. 156). He reported shooting pool two or three times a week. (*Id.*).

Delong reported having difficulty with lifting, bending, standing, walking, hearing, stair climbing, seeing and using his hands. (Tr. 157). His difficulties with standing and walking were due to his leg swelling. (*Id.*). Delong did not report difficulty with sitting. (*Id.*). He reported that he could maintain concentration for as long "as needed." (*Id.*). Delong reported being prescribed Furosemide, a medication for edema,[1] as well as Avalide and Verapamil which are medications for hypertension.[2] (Tr. 159). He reported that these were medications he did not have. (*Id.*).

In an undated disability appeals report, Delong did not report any additional conditions or limitations, except that he stated that he still needed to "take rest breaks during the day to help deal with the pain and fatigue" and that, depending on his back he would "lay down or recline." (Tr. 166). In a December 29, 2008 function report, Delong again reported leg swelling, specifically as it affected his ability to stand to cook meals, go outside for walks or participate in his hobbies of hunting and fishing. (Tr. 180; 182; 183). He reported difficulties with a number of activities including lifting, squatting, bending, standing, reaching, walking, kneeling, hearing, stair climbing, seeing, memory and using his hands, but did not report any difficulty sitting. (Tr. 184). Delong continued to report being prescribed Furosemide and Verapamil, in addition to

[1] *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000791/ (last visited Feb. 22, 2012).

[2] *See* http://www.ncbi.nlm.nih.gov/medlineplus/druginfo/meds/a602003.html (last visited Feb. 22, 2012) (Avalide); *see* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000818/ (last visited Feb. 22, 2012) (Verapamil).

Lisinopril which is another hypertension medication.[3] Delong reported being hospitalized on May 4, 2008 for his edema. (Tr. 202).[4] He reported being prescribed erithrocin stearate for his edema. (*Id.*).[5]

*2. Plaintiff's Testimony*

Delong testified that he was a high school graduate and currently lived in a first floor apartment with a friend. (Tr. 33-34). On his alleged onset date, Delong stopped working at his last job, which was in a factory, because he was laid off. (Tr. 35). For six months after that time, Delong collected unemployment insurance while he applied for other factory jobs. (*Id.*). When asked if he could return to his former employment, Delong testified he could not because of his declining health. (Tr. 37). He testified that his former jobs involved standing on his feet for 8-12 hour shifts. (Tr. 35-36). He testified that the conditions that prevent him from returning to that work included leg edema, blood pressure issues which cause headaches, inability to walk far due to his weight and uncontrolled diabetes. (Tr. 37).

Delong testified that his blood pressure medication kept his hypertension under control so long as he was not too active or was not put under stress or pressure by others. (Tr. 41-42). He testified that he was at times able to tell when his blood pressure was elevated because of burning and ringing in his ears. (Tr. 47). The ringing occurred two to three times a week. (*Id.*).

With regard to his edema, Delong testified that his legs swelled up every day and that he had to prop them up at night in order for the swelling to recede. (*Id.*). He testified that if he

[3] *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000917/ (last visited Feb. 22, 2012).

[4] There are no records in the file with regard to an emergency room visit for edema.

[5] While Delong reported taking this medication for his edema, it appears that erithorcin stearate, otherwise known as erithomycin, is an antibiotic.
*See* http://www.ncbi.nom.hih.gov/pubmedhealth/PMH0000662/ (last visited Feb. 22, 2012).

stood for more than one or two hours his legs became very swollen, and if he remained up most of the day they would get very large. (Tr. 39). Delong testified that he propped his legs up not only at night, but two to three hours during the day while watching television. (Tr. 39-40). He testified that while laying down at nights his legs would be elevated above his chest; during the day they would be waist height. (Tr. 41). He testified that a Dr. Ronald Bishop at Memorial Hospital recommended that he elevate his legs, but Delong did not say how, when or for how long Dr. Bishop recommended he do it. (Tr. 40).

While he would do things like prepare his own meals, laundry and occasionally vacuum, Delong testified to needing to sit intermittently due to fatigue, and he testified that he props his legs up while waiting for the laundry. (Tr. 43-44). He testified that he would lie down after completing chores. (Tr. 44). Delong testified that he did his own shopping, but that he rode in a cart at the store. (Tr. 44). He also drove occasionally, when he felt "really well. (Tr. 34). Delong testified that he liked to go fishing and hunting, but that he would take three or four days to recuperate afterwards. (Tr. 44). The last time he went hunting was in November 2009, and he went fishing once the fall before that. (Tr. 44). Delong testified that he could lift a gallon of milk, walk for fifteen minutes at a time, stand for 30 minutes at a time, and walk approximately a city block before stopping. (Tr. 44-45).

*3. Medical Evidence*

*a. Treating Sources*

Delong's treating physician during this time was Dr. David Huff. Dr. Huff started treating Delong in January 2007, when Delong complained of stomach pain and an ear ache. (Tr. 249). Dr. Huff's treatment notes are often illegible, but it appears that during the time period in question, he noted leg edema approximately twice, (Tr. 255; 319), over the course of

fourteen appointments. (Tr. 240-58; 319; 322; 325; 329). He noted edema on March 7, 2007 and May 28, 2008. (Tr. 255; 319). At the May 28, 2008 appointment, Dr. Huff also noted abnormal extremities upon examination, adding the notation "mild." (Tr. 319). Dr. Huff noted hypertension on at least eight occasions. (Tr. 249-252; 254-55; 319; 322). There is no indication of any specific instructions Dr. Huff gave to Delong with regards to his edema, except that he prescribed medication to alleviate it. (Tr. 255). On March 23, 2007, Dr. Huff completed a short-term disability form for Delong, concluding that he was "unable to perform his job duties due to uncontrolled diabetes [and] blood pressure." (Tr. 316). In addition, on May 8, 2009, Dr. Huff completed an assessment of Delong's ability to engage in work-related activities. (Tr. 326-328). In his assessment, Dr. Huff found that Delong could stand or walk a total of 1 hour, and only 15-20 minutes without interruption. Dr. Huff cited "back, leg and foot pain" as the medical findings to support his assessment. (Tr. 326). Dr. Huff also found that Delong's sitting was affected, "but not very much." (*Id.*). Dr. Huff found that Delong could only lift ten pounds, could push, pull or bend "very little," could never climb, kneel or crawl, and only occasionally balance, stoop or crouch. (Tr. 326-27). He determined that Delong's pain and discomfort affected his ability to concentrate or sustain activity over a long period of time. (Tr. 328). Dr. Huff concluded that Delong would be unable to sustain even sedentary work over an eight hour day without the need to lie down or take several unscheduled rest breaks due to pain or fatigue. (*Id.*). In the assessment, Dr. Huff diagnosed Delong with Type 2 diabetes, hypertension, obesity, sleep apnea, headaches and unspecified tinnitus. (*Id.*). In a treatment note, which accompanied the assessment form and appears to have also been dated May 8, 2009, Dr. Huff noted an abnormal finding regarding Delong's extremities, although the accompanying notation is illegible, as are the remainder of the notes from this date. (Tr. 329).

At an emergency room visit on January 13, 2007, an ER doctor, Dr. Kevin Craig, noted no pedal edema upon examination. (Tr. 224). Dr. Huff referred Delong to an ENT specialist for the ringing in his ears. (Tr. 227-230). On February 21, 2007, Dr. Shannon Radgens, D.O., who evaluated Delong for tinnitus and dizziness, among other things, noted that Delong reported ankle edema as one of his conditions. (Tr. 228). She did not examine him for edema, however. (Tr. 228-229).

Delong's historic prescription records, spanning from December 2007 through November 2009, reveal sporadic filling and refilling of his prescriptions. (Tr. 204-212). For example, Delong filled his prescription for Furosemide consistently from December 2007 through February 2008 but then did not refill until May 2008, and then again in October 2008 and then not again until June 2009. (Tr. 204-210). His filled his hypertension medication prescriptions similarly, though somewhat more regularly. (*See generally* Tr. 204-212).

*b. Consultative and Non-Examining Sources*

On January 12, 2008, Delong was evaluated by Dr. Richard Gause for a state disability claim. (Tr. 261-64). Dr. Gause recorded that Delong took Lasix for pendant edema, but did not note any edema during his physical examination of Delong and did not draw any conclusions involving edema. (Tr. 261-63).

A physical RFC assessment of Delong was conducted by Dr. Byong-Du Choi, M.D. on February 19, 2008. (Tr. 295-302). Based on an evaluation of the records available at the time, Dr. Choi diagnosed Delong with hypertension, diabetes and headaches, with a secondary diagnosis of a ventral hernia and sleep apnea, and under "other alleged impairments" listed "obesity." (Tr. 295). Dr. Choi also noted that "standing and walking cause [Delong's] legs to swell up," and that he had to sit down to dress. (Tr. 300). However, Dr. Choi found Delong

capable of standing or walking six hours out of an eight-hour day. (Tr. 296). Dr. Choi also found Delong capable of sitting six hours a day, as well as lifting 10 pound frequently and 20 pounds occasionally, with unlimited pushing or pulling. (Tr. 296). Dr. Choi assessed that Delong could occasionally climb ramps, stairs, ladders, ropes or scaffolding, and frequently balance, stoop, kneel, crouch or crawl. (Tr. 297). He found no manipulative or visual limitations, and the only environmental limitation was the avoidance of moderate exposure to hazards. (Tr. 298-99).

On May 13, 2008, Dr. Abdullah Raffee, M.D. evaluated Delong for the Gennessee County Family Independence Agency. (Tr. 308-310). Dr. Raffee noted, in a recitation of Delong's medical history, the existence of severe edema and swelling of both lower extremities "because of [Delong's] significant weight." (Tr. 308). Dr. Raffee also noted that Delong had been out of his hypertension medications "for a while" because "he had no insurance and ran out of medication," and his high blood pressure causes him "to swell up all over." (Tr. 309). Dr. Raffee's examination of DeLong's cardiovascular system found "[n]o gallop or murmur. No JVD.[6] No edema," though he did not specify for what type of edema he was checking (Tr. 310). Dr. Raffee did not specifically note any leg edema in his impressions of Delong. (*Id.*).

On May 24, 2008 Delong was evaluated by psychologist Robert Bottinelli. (Tr. 311-13). While Bottinelli was consulted to evaluate Delong's mental state, he did document at the consultation that Delong had badly swollen legs and ankles. (Tr. 311).

*4. Vocational Expert's Testimony*

Norman Ables testified as a VE. (Tr. 49). The transcript of the VE testimony is incomplete in spots, specifically when the ALJ is describing her main hypothetical. (Tr. 51).

---

[6] Jugular Vein Distention.

However, the parties appear to agree that the hypothetical the ALJ proffered to the VE was ultimately her RFC assessment, which included an ability to do light work, with the additional restrictions of no exposure to heights or hazards, no climbing of ladders, ropes or scaffolding, only occasionally climbing of ramps and stairs, and work that involved only simple instructions and routine tasks, as well as an opportunity to alternate between sitting and standing every hour. (Tr. 51-53; 17); (Plf. Brf. at 2; Def. Brf. at 11). The VE testified that based on this, Delong could not return to his former employment due to the need for a sit/stand option, but that there were other jobs in the economy that he could perform with those limitations, including inspector, checker or examiner, machine feeder, machine operator, or small parts assembler. (Tr. 52). When the ALJ added the limitation of needing to elevate his leg to waist level at times other than scheduled rest breaks, the VE testified that this limitation would eliminate the jobs otherwise available. (Tr. 52). Delong's counsel asked the VE about the effect of needing three or four unscheduled 20-minute rest breaks throughout the day. The VE testified that such a limitation would preclude the listed jobs. (Tr. 53).

**C. Framework for Disability Determinations**

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueunieman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240 at *21 (E.D. Mich. Dec. 6, 2011) *citing* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**D. The ALJ's Findings**

Following the five-step sequential analysis, the ALJ determined that Delong was not disabled. At Step One, she found that Delong had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). At Step Two, she found that Delong had the following severe impairments: "hypertension, diabetes, hernia, obesity, sleep apnea, and depression." (*Id.*). At Step Three, she determined that none of Delong's impairments, either in isolation or in combination, met or medically equaled a listed impairment, even when taking into account the

cumulative effects of his obesity. (Tr. 15-16). In assessing his mental state, the ALJ found that Delong had mild restrictions in activities of daily living, and social functioning and moderate difficulties in concentration persistence and pace, but had no repeated episodes of decompensation. (Tr. 16).

The ALJ next assessed Delong's RFC. She found him capable of performing light work, as defined in 20 CFR 404.1567(b), with the following additional limitations, "no climbing of ladders, ropes, or scaffolds; no exposure to heights or hazards; only occasional climbing of ramps and stairs; only simple instructions; only routine tasks; and the ability to alternate between sitting and standing every hour." (Tr. 17). At Step Four, she found that Delong could not return to his prior relevant work. (Tr. 22). At Step Five, the ALJ concluded that, based on his age, education, vocational background and RFC assessment, Delong could perform a significant number of jobs in the national economy such that he was not disabled. (*Id.*).

**E. Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F. Analysis**

Delong argues that the ALJ's findings at Step Five are not supported by substantial

evidence because she erred in rejecting treating Dr. Huff's functional capacity assessment and in failing to adopt the restrictions he placed on Delong as a part of her RFC assessment. In addition, her determination that there was no objective evidence supporting Delong's assertion that he must elevate his legs 2-3 hours a day was not supported by substantial evidence. As a result, the hypotheticals she posed to the VE were not complete as they did not contain all of the limitations required. The court finds that Delong's argument lacks merit and that substantial evidence supports the ALJ's decision.

*1. Evidence Regarding Leg Elevation*

Delong testified that his legs would swell up and that the swelling would subside when he elevated his legs at night. (Tr. 37). When asked by the ALJ if he also elevated them during the day, he testified that he did, when he was watching television. (Tr. 39-40). The ALJ then asked, "When you elevate your legs, was that recommended by a doctor?" to which Delong responded that it was. (Tr. 40). However, it is not clear from the transcript whether Delong's response was actually referring to elevating his legs while watching television during the day or just elevating them when he lays down at night. He testified that he *had* to elevate them at night or the edema would not recede, but his testimony about his *need* to do so during the day when watching television was not as clear. (Tr. 37; 39-40). Regardless, even assuming that Delong felt he had to elevate his legs during the day to reduce the swelling, the ALJ was correct that this testimony was not supported by the objective medical evidence in the record.

Delong testified that the doctor who recommended he elevate his legs was Ronald Bishop. It is impossible to tell from the Memorial Healthcare treatment records when Delong saw Dr. Huff and when he saw Dr. Bishop, as, other than illegible signatures, there is no indication which was the treating doctor. Regardless, on the legible portions of the treatment

records there is no indication that Delong was ever recommended by a doctor to elevate his legs 2-3 hours a day. Dr. Huff prescribed medicine for Delong's edema, and from the records there is no indication that Delong informed Dr. Huff that the medication was ineffective. (Tr. 255; 319). Neither Dr. Huff's short term disability form nor his functional capacity assessment listed leg elevation as a restriction. (Tr. 316; 326-28). Indeed, his assessment found that while Delong's ailments interfered with his ability to sit, Dr. Huff qualified that with "but not very much." (Tr. 326). He did not include a notation that Delong would be required to elevate his legs while sitting. In fact, he failed to complete the portion of the form requesting the medical findings to support his assessment about Delong's ability to sit. (*Id.*).

Delong argues that the existence of notations in the medical record to his severe edema supports his need to elevate his legs. However, the fact that there is evidence of his edema in the record is not sufficient to support a finding that he must elevate his legs to waist height 2-3 hours a day, in addition to at night, without some additional evidence to support such a limitation. The existence of a condition does not necessarily require the existence of a limitation. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) ("[T]he RFC is meant to describe the claimants residual abilities or what a claimant can do, not what maladies a claimant suffers from . . ."). The fact that there are no notations in the record, even from Delong's treating physician, about his need to elevate his legs at night, let alone during the day, supports the ALJ's ultimate determination on the issue.

Delong argues that Dr. Huff's requirement that Delong lie down frequently during the work day, coupled with his diagnosis of hypertension, comports with Delong's testimony of needing to elevate his legs. (Tr. 328). However, the need to lie down is not the same as the need to elevate one's legs, and there can be many reasons a doctor would recommend rest periods

other than for edema. In addition, there is no evidence to support Dr. Huff's limitation that Delong need lie down frequently during the day. While Delong reported and testified about fatigue, there is no notation on any of his treating records that he reported excessive fatigue to his doctors. On this record, the court concludes that the ALJ's decision to discredit Delong's testimony about his need for leg elevation is supported by substantial evidence.

*2. Dr. Huff's Functional Capacity Assessment*

Correspondently, Delong argues that the ALJ erred in disregarding Dr. Huff's functional capacity assessment in favor of the assessment of a consultative physician who did not have the benefit of some of Dr. Huff's treatment records or other consultative reports.

An ALJ must give a treating physician's opinion controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) *quoting* 20 C.F.R. § 404.1527(d)(2). If an ALJ declines to give a treating physician's opinion controlling weight, she must then determine how much weight to give the opinion, "by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) *citing Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2). The ALJ must give good reasons, supported by substantial evidence in the record, for the ultimate weight given to a treating source opinion. *Id.*, *citing Soc. Sec. Rul*. 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188 at *5. An ALJ is not required to give any special weight to a treating source's conclusion that a claimant is disabled, as this conclusion is reserved to the

Commissioner alone, based on all the evidence of record. 20 C.F. R. § 404.1527(e)(1), (e)(3).

Here, the ALJ disregarded Dr. Huff's short term disability form, which concluded Delong was disabled, as well as his functional assessment and the limitations it imposed because they were "not supported by the minimal medical findings in the progress notes," and were "inconsistent with the overall evidence of record." (Tr. 21). Contrary to Delong's assertion, the ALJ did consider the factors necessary in determining what weight to give Dr. Huff's opinion and determined that it did not meet the supportability requirement. As stated elsewhere in her opinion, the medical records document few abnormal exam findings and, other than a few notations of edema (Tr. 255; 319) and two findings of abnormal extremities (Tr. 319; 329), there are no other references to edema in the treating record, and only one observatory reference in the consultative record. (Tr. 311). The other consultative references appear to document only reports of edema, not examination findings of such. (Tr. 228; 261; 300; 308). Furthermore, Dr. Huff's imposition of a restriction requiring Delong to lie down several times during the work day is unsupported by anything either in his own treatment notes or the notes of any consultative physician. A diagnosis of uncontrolled hypertension and diabetes alone does not necessarily warrant such a limitation. *See Howard*, 276 F.3d at 240. While Dr. Choi did not have the benefit of some of Dr. Huff's treatment records or other consultative reports, on this record the court cannot find that the effect of this taints the ALJ's findings. Except for the treatment note accompanying his functional assessment form, Dr. Huff only noted edema once after February 2008, documenting it as "mild" in his treatment notes, and it does not appear from the record he made any changes to Delong's regimen for edema at that time. (Tr. 319; 329). In addition, the ALJ had the benefit of all of the reports, both treating and consultative, and evaluated them all in making her assessment and, in fact, she placed more limitations on Delong than Dr. Choi found

necessary. (*Compare* Tr. 17 with 295-302). Based on the record evidence, the court finds that the ALJ did not err in giving Dr. Huff's two disability forms no weight.[7]

*3. Hypothetical Questions*

Finally, Delong argues that the hypothetical questions the ALJ posed to the VE were inadequate because they did not account for all of his limitations. An ALJ is entitled to rely upon the testimony of a VE in response to hypothetical questions to the extent those questions accurately portray the claimant's physical and mental impairments. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). However, an ALJ is only required to pose those hypothetical limitations that she finds credible. *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143 (6th Cir. Sept. 21, 2011) *citing Stanly v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994).

Here, the ALJ included all of the limitations she found credible, including ones that consulting Dr. Choi did not find warranted. (Tr. 17; 295-302). Based upon the above analysis finding no error in the ALJ's rejection of Dr. Huff's proposed limitations and the limitations to which Delong testified, the court finds that the ALJ did not err in deciding not to include them in her hypothetical questions. Because the hypotheticals the ALJ posed to the VE included all of Delong's credible limitations, the VE's testimony was sufficient and the ALJ was entitled to rely upon it. Hence, substantial evidence supports the ALJ's determination that Delong was not disabled.

---

[7] While not argued by Delong, the court notes that the general illegibility of the treatment notes could have spurred the ALJ to re-contact the treating physician. However, the Sixth Circuit has stated that an ALJ need do so only "when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 n.3 (6th Cir. 2009). The ALJ here only rejected Dr. Huff's limitations, not his treatment records.

## III. CONCLUSION

For the foregoing reasons, the court RECOMMENDS that the Commissioner's Motion for Summary Judgment [11] be GRANTED, Delong's Motion for Summary Judgment [10] be DENIED, and the Commissioner's decision be AFFIRMED.

Dated: February 24, 2012
Ann Arbor, Michigan

s/David R. Grand
DAVID R. GRAND
United States Magistrate Judge

## NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 24, 2012.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager